# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEBORAH NERVIANO, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CONTRACT ANALYSIS | : | |
| SYSTEMS, LLC, et al., | : | No. 17-4907 |
|     Defendants. | : | |

## MEMORANDUM

**Schiller, J.**                                                                                              May 16, 2018

According to Deborah Nerviano, an Italian-American with numerous disabilities, she was fired from her job at Contract Analysis Systems, LLC ("CAS") and replaced by a Jewish woman. Nerviano alleges that she had extracted a promise whereby she could continue at her job receiving her full salary, provided she turned over her disability checks to CAS. She brings a host of claims, including discrimination and breach of contract, against a number of individuals. She also asserts that ADP Totalsource, Inc. ("ADP") was a joint employer along with CAS and is therefore also liable. All Defendants have moved to dismiss the entire case. The Court will grant the motions in part and deny the motions in part; all that remains is the discrimination claim against CAS, Howard Koenig, Sal De Trane, and Michael Greene, and the breach of contract claim against CAS.

## I.     FACTUAL BACKGROUND

Nerviano is a disabled Italian-American female who suffered from knee problems that required two full knee replacement surgeries. (Am. Compl. ¶¶ 6, 29, 31, 46.) She also suffered from chronic cellulitis, obstructive sleep apnea, hypersomina, and narcolepsy. (*Id*. ¶¶ 29, 33.)

CAS is a healthcare technology company that provides real-time updates of clients'

healthcare information. (*Id*. ¶ 24.) On April 16, 2010, Nerviano began working for CAS as the Vice President of Administration. (*Id*. ¶ 20.) In that role, she was the office manager, facility manager, and the assistant to John Zubak, the CEO, and Harvey Mitgang, the President of CAS. (*Id*. ¶ 21.) She also "took care of the human resources function as well as the bookkeeping and accounting," and she developed the Quickbooks billing system. (*Id*. ¶¶ 21–22.)

Nerviano's disabilities affected her ability to travel to and from work; she was able to complete her work, but she needed an accommodation to work from home. (*Id*. ¶ 36.) She requested that accommodation, and she began regularly working from home in April of 2012. (*Id*. ¶¶ 37–39.) Nerviano also began to receive disability checks around April of 2012. (*Id*. ¶ 41.) In June of 2012, Nerviano went on disability because she needed knee replacement surgery and was suffering from chronic cellulitis. (*Id*. ¶ 29.) At the time of her first knee replacement, Nerviano also suffered from conditions that affected her resting patterns, made her tired, and made it difficult for her to concentrate and focus. (*Id*. ¶¶ 33, 36.) As a condition of her employment, Defendants required Nerviano to sign over her disability checks to the company before they would pay her. (*Id*. ¶ 42.) Nerviano agreed to turn over her disability payments in exchange for her continued employment. (*Id*. ¶ 43.)

In November of 2015, Nerviano had to undergo a second full knee replacement surgery. (*Id*. ¶ 46.) At all relevant times, Nerviano continued to sign over her disability checks to the company and to complete her work from home. (*Id*.)

On August 2, 2016, Nerviano received an email announcing some changes to the organization; specifically, she was informed that Zubak and Mitgang would be assuming different roles. (*Id*. ¶¶ 48–49.) The email announced that Howard Koenig and Sal De Trane would act as dual

President and CEO for CAS. (*Id.* ¶ 50.) The email stated that a further explanation of the changes would be detailed at a staff meeting set for August 4, 2016. (*Id.* ¶ 51.)

Because Plaintiff was scheduled to be out of town on August 4, she reached out to Zubak and Mitgang. (*Id.* ¶ 52.) Zubak assured Nerviano that everything was fine and that her job was safe. (*Id.* ¶ 53.) She was told that "Defendants would not terminate her per the agreement between Plaintiff and Mr. Zubak." (*Id.*)

On August 8, 2016, Koenig asked Nerviano if she was available to meet later that day. (*Id.* ¶ 56.) Krystyna Raporte, CAS's VP of Finance, De Trane, CAS's CEO, and Michael Greene, a CAS director, were copied on the email. (*Id.* ¶¶ 16, 18, 56.) Nerviano responded via email only to Koenig and De Trane because her email response included personal health information. (*Id.* ¶ 57.) Plaintiff explained that she could not attend a meeting that day but that she could meet in the office on Wednesday or Thursday. (*Id.* ¶ 58.) Koenig responded that he understood the nature of Plaintiff's disability and that they could meet on Wednesday, August 10, 2016. (*Id.* ¶ 59.) On August 9, 2016, Nerviano got a phone call from Koenig, a Jewish-American. (*Id.* ¶¶ 60–61.) Greene and Raporte were also on the call. (*Id.* ¶ 60.) Koenig told Nerviano that Raporte had accepted a full-time job with the company, and that Nerviano would report to Raporte, a Jewish-American. (*Id.* ¶ 61.)

On August 10, 2016, Nerviano met with Koenig, De Trane, Raporte, and Greene. (*Id.* ¶¶ 62, 64.) Plaintiff was asked a number of questions about her responsibilities. (*Id.* ¶¶ 65–67.) After this questioning, Nerviano was informed that she was terminated, effective immediately. (*Id.* ¶ 68.) "Defendant ADP was informed of Plaintiff's termination and assented to the termination because ADP Totalsource canceled all of Plaintiff's benefits at the time of her termination." (*Id.* ¶ 69.)

According to Nerviano, Defendants kept her personal effects that were in her office for over

3

six weeks before Zubak and Mitgang returned her things. (*Id*. ¶ 77.) Nerviano also learned that her co-worker was replaced by a Jewish female. (*Id*. ¶ 78.)

Nerviano claims that CAS and ADP were both joint and single employers of Nerviano. (*Id*. ¶ 11.) ADP is a Certified Professional Employment Organization and holds a Certified Professional Employment Organization Surety Bond from the IRS. (*Id*. ¶¶ 26–27.) ADP is identified on Nerviano's 2016 W-2 as an employer. (*Id*. ¶ 72.)

Nerviano's Complaint includes the following claims: discrimination under 42 U.S.C. § 1981; discrimination under the rehabilitation act; fraud; misrepresentation; conversion of her disability benefits and her personal effects; breach of contract; and negligence for publishing Nerviano's personal health information to other employees.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim, a district court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party. *See Bd. of Trs. of Bricklayers & Allied Craftsmen Local 6 of N.J. Welfare Fund v. Wettlin Assocs.*, 237 F.3d 270, 272 (3d Cir. 2001). A court need not, however, credit "bald assertions" or "legal conclusions" when deciding a motion to dismiss. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In considering a motion to dismiss, a district court is generally limited to "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). However, a court may also consider "an undisputedly authentic document that a defendant attaches as an

4

exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Id*. This narrow category of exhibits which may be considered includes only those which are "integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotation marks omitted). Documents that are relevant to claims, but which do not serve as the basis of the claims, are not properly considered at the motion to dismiss stage. *See Schmidt v. Skolas*, 770 F.3d 241, 249–50 (3d Cir. 2014).

"Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Although the federal rules impose no probability requirement at the pleading stage, a plaintiff must present "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a cause of action. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Simply reciting the elements will not suffice. *Id.* (holding that pleading labels and conclusions without further factual enhancement will not survive motion to dismiss); *see also Phillips*, 515 F.3d at 233.

The Third Circuit Court of Appeals has directed district courts to conduct a two-part analysis when faced with a motion to dismiss for failure to state a claim. First, the legal elements and factual allegations of the claim should be separated, with the well-pleaded facts accepted as true but the legal conclusions disregarded. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). Second, the court must make a commonsense determination of whether the facts alleged in the

complaint are sufficient to show a plausible claim for relief. *Id.* at 211. If the court can only infer the mere possibility of misconduct, the complaint must be dismissed because it has alleged—but has failed to show—that the pleader is entitled to relief. *Id.*

## III. DISCUSSION

### A. ADP's Status as an Employer

Nerviano alleges that she began working for CAS in April of 2016, but that CAS and ADP were both "joint and single employers of Plaintiff." (Compl. ¶¶ 11, 20.) However, according to ADP, Plaintiff's "amorphous references to [ADP] as a professional employer organization is insufficient to confer liability upon [ADP]. Likewise, there is not a single allegation in the Amended Complaint alleging, in words or substance, that [ADP] controlled Plaintiff's employment." (Def. ADP's Mem. of Law in Supp. of Its Mot. to Dismiss Pl.'s Am. Compl. [ADP's Mem.] at 8.) The Court agrees.

Liability as a joint employer may arise if "two entities exercise significant control over the same employees." *Graves v. Lowery*, 117 F.3d 723, 727 (3d Cir. 1997) (citing *NLRB v. Browning–Ferris Indus. of Pa., Inc.*, 691 F.2d 1117, 1123 (3d Cir. 1982)). In evaluating whether a joint employer relationship exists, courts consider: (1) authority to hire and fire employees, (2) authority to promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; (3) day-to-day supervision of employees, including employee discipline; and (4) control of employee records, including payroll, insurance, taxes, and the like. *In re Enter. Rent–a–Car Wage & Hour Emp't Practices Litig.*, 683 F.3d 462, 469 (3d Cir. 2012). These factors are not exhaustive; the court must consider the entire employment situation and economic realities of the employment relationship. *Id.*

The Court is mindful that the precise relationship between business entities is often a fact-intensive inquiry that requires discovery to untangle. *See Graves*, 117 F.3d at 729. Here, however, Nerviano has had two opportunities to include factual allegations that could support a single or joint employer theory. She has failed to include any factual allegations that would permit an inference that ADP was her employer. The Amended Complaint includes no suggestion that ADP set her hours, promulgated rules that applied to her, could alter her working conditions, or supervised her in any way. There are no allegations that ADP played any role in the day-to-day operation of Nerviano's job. Rather, it appears as though ADP provided bookkeeping, record keeping, and human resource services for CAS. Moreover, it appears as though the individual Defendants in this case were all related to CAS, and had no affiliation with ADP. The only allegations against ADP are that it appeared on her 2016 W-2 as "an employer," it "handled the human resource functions for Defendants," and it "was informed of Plaintiff's termination and assented to the termination because ADP Totalsource cancelled all of Plaintiff's benefits at the time of her termination." (Am. Compl. ¶¶ 69–72.)

ADP did not create an employer/employee relationship by handling record keeping for CAS. *See Nardi v. ALG Worldwide Logistics*, 130 F. Supp. 3d 1238, 1248–49 (N.D. Ill. 2015) (concluding that company that provided human resources and record keeping services, including payroll services, was not an employer under Title VII because that company did not control her work, issue discipline, or decide to fire the plaintiff); *see also Woldu v. Hotel Equities, Inc.*, Civ. A. No. 09-685, 2009 WL 10668443, at *13 (N.D. Ga. Sept. 18, 2009) (granting motion to dismiss against company that performed human resources services because the plaintiff failed to allege facts that showed the company controlled the employees, such as allegations that the company "set her pay; established

her days and hours of work; advised her on how to do her job; or required her to report to it"). Absent allegations that ADP had some ability to dictate Nerviano's working conditions or played some role in the decision to terminate her, the Court concludes that ADP should not be a part of this case under a joint employer theory.

There is even less support for the contention that ADP and CAS are a single employer of Nerviano. The single employer theory asks whether "two nominally distinct companies should be treated as one entity for purposes of antidiscrimination laws." *Anderson v. Finley Catering Co.*, 218 F. Supp. 3d 417, 422 (E.D. Pa. 2016). The single employer test asks the court to consider (1) the interrelation of operations between the corporations; (2) whether the corporations shared common management; (3) whether there was centralized control of labor relations; and (4) whether there existed common ownership or financial control. *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 84 (3d Cir. 2003).

The Amended Complaint is devoid of allegations that would support a finding that ADP and CAS functioned as one entity. There is no suggestion that the two entities operated together, shared common management, or centralized control. These are two distinct companies.

There are no factual allegations that would support any claims against ADP as an employer of Nerviano, and ADP is therefore dismissed from this litigation.

**B.      The Rehabilitation Act**

Nerviano claims that Defendants violated 29 U.S.C. § 793, which states that "[a]ny contract in excess of $10,000 entered into by any Federal department or agency for the procurement of personal property and nonpersonal services (including construction) for the United States shall contain a provision requiring that the party contracting with the United States shall take affirmative

action to employ and advance in employment qualified individuals with disabilities."

The Court has no idea why this particular provision of the Rehabilitation Act found its way into the Amended Complaint. This provision does not provide a private right of action. *Beam v. Sun Shipbuilding & Dry Dock Co.*, 679 F.2d 1077, 1078 (3d Cir. 1982) ("The six circuits that have considered the issue have held that no private right of action exists under section 503. . . . Our own examination . . . leads us to the same conclusion."); *Miccoli v. Ray Commc'ns, Inc.*, Civ. A. No. 99-3825, 2000 WL 1006937, at *3 n.5 (E.D. Pa. July 20, 2000) ("In the Third Circuit, as in many other courts of appeals across the country, no private right of action is available to enforce § 503(a)'s affirmative action provision."). Nerviano must turn to the Department of Labor if she seeks redress of a violation of § 793. *See* 29 U.S.C. § 793(b) ("If any individual with a disability believes any contractor has failed or refused to comply with the provisions of a contract with the United States, relating to employment of individuals with disabilities, such individual may file a complaint with the Department of Labor.").

For the sake of completeness, Nerviano does not have a claim under § 794 of the Rehabilitation Act either. This section prohibits federal agencies and private entities that receive federal funding from discriminating based on a disability. 29 U.S.C. § 794(a). Specifically, "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . ." *Id*.

"A claimant litigating pursuant to the Rehabilitation Act is required to exhaust all administrative remedies in accordance with Title VII of the Civil Rights Act of 1964 . . . before filing suit." *White v. Sch. Dist. of Phila.*, Civ. A. No. 05-92, 2008 WL 2502137, at *6 (E.D. Pa. June 19,

2008). Plaintiff has failed to exhaust her administrative remedies and the Rehabilitation Act must therefore be dismissed.

### C. 42 U.S.C. § 1981

The relevant law states:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). The substantive elements of a § 1981 claim are identical to the elements of a Title VII employment discrimination claim. *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181–82 (3d Cir. 2009). Accordingly, to establish a prima facie case of discrimination, plaintiff must show that: (1) she is a member of a protected class; (2) she satisfactorily performed the duties required by the position; (3) she suffered an adverse employment action; and (4) either similarly-situated non-members of the protected class were treated more favorably or the adverse job action occurred under circumstances that give rise to an inference of discrimination. *Wallace v. Federated Dep't Stores, Inc.*, 214 F. App'x 142, 144–45 (3d Cir. 2007).

This is a close case, but the Court concludes that Nerviano has stated a claim under § 1981 against CAS, Koenig, De Trane, and Greene. Plaintiff has pled all of the elements to state a prima facie claim, including that she was treated less favorably than a similarly situated employee of a different group when she was terminated and replaced by Raporte. The Court will not let the discrimination claim against Raporte proceed, however. As Plaintiff concedes, "Plaintiff pled that the persons responsible for making her termination decision were Defendants Koenig, De Trane, and

Greene." (Pl.'s Mem. of Law in Opp'n to Defs.' CAS, Koenig, De Trane, Raporte, and Greene's Mot. to Dismiss Pl.'s Am. Compl. at 15.) Raporte was the person who replaced Nerviano, and there are no factual allegations in the Amended Complaint that suggest Raporte took any adverse action against Nerviano.

Defendants argue that Nerviano has failed to state a claim under § 1981 because that law protects against race discrimination, not discrimination based on national origin, which is what Plaintiff has asserted here. (Defs. CAS, Koenig, De Trane, Raporte, and Greene's Mem. of Law in Supp. of Moving Defs.' Mot. to Dismiss Pl.'s Am. Compl. at 9–11.)

Defendants are correct that § 1981 protects against discrimination based on ancestry or ethnic characteristics, but not based on claims based on national origin. *See Torgerson v. City of Rochester*, 643 F.3d 1031, 1052–53 (8th Cir. 2011); *see also Hajra v. Wawa, Inc.*, Civ. A. No. 15-7513, 2018 WL 565574, at *5 n.9 (D. N.J. Jan. 26, 2018) ("Although the Third Circuit has not directly addressed the issue, several courts within the circuit, and several other circuits, have held that claims of national origin discrimination are not cognizable under Section 1981.").

Nerviano wisely phrased her § 1981 claim as one based upon race. (*See* Am. Compl. ¶ 91 ("Plaintiff, as an Italian American, was discriminated against by Defendants because of her race . . . .").) Without a more developed record of the reasons for Nerviano's firing, the Court cannot at this point say that an Italian-American cannot state a claim under § 1981, provided the discrimination was based on ancestry or ethnic characteristics, as opposed to national origin. *Cf. Petrone v. City of Reading*, 541 F. Supp. 735, 739 (E.D. Pa. 1982) (dismissing § 1981 claim brought by Italian-America because the claim was "based only upon his heritage").

Plaintiff may proceed on her discrimination claim against CAS, Koenig, De Trane, and

Greene.

### D. Fraud/Misrepresentation

Under Pennsylvania law, the elements of common law fraud are: (1) a misrepresentation; (2) material to the transaction; (3) made falsely; (4) with the intent of misleading another to rely on it; (5) justifiable reliance resulted; and (6) an injury proximately caused by the reliance. *Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 136 (3d Cir. 2005). To state a claim for fraudulent misrepresentation, a plaintiff must show: "(1) a misrepresentation, (2) a fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation and (5) damage to the recipient as the proximate result." *Fox Int'l Relations v. Fiserv Secs., Inc.*, 490 F. Supp. 2d 590, 607 (E.D. Pa. 2007).

Nerviano has failed to state a claim here. First, the only claim she makes is that Zubak, the former CEO who is not named as a defendant, informed her that her job was secure and that she had nothing to worry about. There is no allegation that Zubak believed his statement to Nerviano to have been false at the time it was made. In fact, Nerviano concedes that "Zubak did not know if these statements to Plaintiff were true, because he could not have been aware of Defendant Koenig and De Trane's intentions when the company changed hands." (Pl.'s Mem. of Law in Opp'n to Defs. CAS, Koenig, De Trane, Raporte, and Greene's Mot. to Dismiss Pl.'s Am. Compl. at 25.) The Court is unsure how Nerviano can extrapolate Zubak's vague assertions of continued employment into a permanent guarantee of future employment, but Nerviano has failed to include factual allegations of any knowledge on the part of Zubak that his words were false. Moreover, any damage or injury suffered by Nerviano was the result of the actions of those who fired her, and not the result of any statements made by Zubak. There is no claim for fraud or misrepresentation here.

### E. Conversion

"Conversion is the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful justification." *Francis J. Bernhardt, III, P.C. v. Needleman*, 705 A.2d 875, 878 (Pa. Super. Ct. 1997). A conversion can occur in several ways: (1) acquiring possession of property with the intent to assert a right to it adverse to the owner; (2) transferring the property and therefore depriving the owner of control; (3) unreasonably withholding possession of the property from the one who has the right to it; and (4) misusing or seriously damaging the property in defiance of the owner's rights. *Fenton v. Balick*, 821 F. Supp. 2d 755, 760 (E.D. Pa. 2011).

The Court agrees with Defendants' contention that the Amended Complaint lacks any allegation that Plaintiff was entitled to disability payments while employed by CAS. (ADP's Mem. at 16.) Moreover, Nerviano willingly turned over her disability payments to CAS, thus nothing was done without her consent. As for her personal effects, there is no indication that Defendants acquired possession of her property with the intent to assert a right to it. Plaintiff merely alleges that it took six weeks to have her personal effects returned to her after she was fired. She does not allege that she tried to get her stuff or that Defendants refused to turn over his things. The Court will dismiss Plaintiff's conversion claim.

### F. Breach of Contract

Nerviano's breach of contract theory is: "Defendants promised to keep Plaintiff employed full-time at her rate of salary with all of her benefits so long as she continued to turn over her disability checks to Defendants." (Am. Compl. ¶ 123.) According to Plaintiff, she was receiving disability payments for a specific period of time. (*Id*. ¶ 124.)

To state a claim for breach of contract under Pennsylvania law, the plaintiff must show: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) damages. *Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 716 (Pa. Super. Ct. 2005). "[A] contract may be manifest orally, in writing, or as an inference from the acts and conduct of the parties." *Id*. In Pennsylvania, employment is considered to be at-will, unless a contract governs the employment relationship. *See Woods v. Era Med, LLC*, 677 F. Supp. 2d 806, 816 (E.D. Pa. 2010). "Absent a contract, either party may terminate the employment relationship at any time, for any reason or for no reason." *Id*.

It is not easy to overcome the presumption of at-will employment. *Ritter v. Pepsi Cola Operating Co. of Chesapeake & Indianapolis*, 785 F. Supp. 61, 64 (M.D. Pa. 1992). To do so, the employee must show clear and precise evidence of an implied-in-fact contract, which may be established by an agreement for employment for a definite duration or by the employee providing additional consideration. *Woods*, 677 F. Supp. 2d at 817. "In order to rebut the presumption of at-will employment, a party must establish one of the following: (1) an agreement for a definite duration; (2) an agreement specifying that the employee will be discharged for just cause only; (3) sufficient additional consideration; or (4) an applicable recognized public policy exception." *Luteran v. Loral Fairchild Corp.*, 688 A.2d 211, 214 (Pa. Super. Ct. 1997).

The Court will allow Nerviano's breach of contract claim against CAS to proceed, but must caution Plaintiff to proceed carefully. The Court is troubled at the prospect of Plaintiff both receiving disability payments and her salary. A reasonable reading of the Amended Complaint suggests that Plaintiff received her full salary while also receiving disability checks, presumably because she was unable to fully perform her job duties. If it turns out that Plaintiff's agreement relied on fraudulently

14

receiving disability checks, Nerviano cannot seek redress from the court for breaching a contract that would violate public policy. However, the exact nature of the alleged agreement is not yet clear. It is possible that Plaintiff alleges merely that she agreed to forego disability entirely in exchange for a promise of continued employment. How that turned into a guarantee of employment for as long as she received disability checks is not clear. Whether that "promise" can overcome the presumption of at-will employment is questionable. But Plaintiff has at least stated a claim against CAS. Plaintiff has failed to put forth any theory as to how any individual Defendant entered into a contract with her or how this Court could impose individual liability against any Defendant. Therefore, the breach of contract claim against all individual Defendants will be dismissed.

### G. Negligence/HIPAA

Nerviano has also asserted a negligence claim, alleging that Defendants violated HIPPA (Health Insurance Portability and Accountability Act) "by publishing Plaintiff's personal health information to other employees." (Am. Compl. ¶ 137.) Plaintiff also asserts that this conduct was "negligence per se." (*Id*. ¶ 138.)

This claim appears to have been abandoned because it went unaddressed in Plaintiff's oppositions to Defendants' motions to dismiss. But just in case Plaintiff intended to push forward, the Court will head Plaintiff off at the pass. This claim is untenable. The Amended Complaint fails to allege what personal health information was "published." More problematic from a legal standpoint, there is no private right of action under HIPAA. *See Henderson v. Borough of Baldwin*, Civ. A. No. 15-1011, 2016 WL 5106945, at *6 (W.D. Pa. Sept. 20, 2016) ("Although the Court of Appeals for the Third Circuit has not addressed this issue, every other federal court to address it has determined that there is no private right of action under HIPAA."). But even treating Plaintiff's claim

as a charge of negligence based on a violation of HIPAA, there are zero allegations that support any HIPAA violation. HIPAA applies only to covered entities, which are defined as healthcare providers, health plans, or healthcare clearing houses. *Id*. Plaintiff has not even attempted to place Defendants under the umbrella of "covered entity."

Nerviano's HIPAA claim must be dismissed.

**IV.     CONCLUSION**

Plaintiff has thrown a lot into her Amended Complaint. Her claim, however, boiled down to its legal essence, is that she was fired because she is an Italian-American. The Court will also let her continue with her breach of contract claim against CAS. The remaining claims fail to withstand a motion to dismiss and will therefore be dismissed. An Order consistent with this Memorandum will be docketed separately.